UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

KENNETH CARL GROVES, SR.,

                                    Plaintiff,

                                                              9:11-CV-1317
v.                                                            (GTS/RFT)

BRETT DAVIS, Secure Care Treatment Aid;
DAVID W. SILL, Secure Care Treatment Aid;
THOMAS NICOLETTE, RN, Ward Nurse;
CHARMAINE BILL, Treatment Team Leader;
JILL E. CARVER, Social Worker, Primary Therapist;
EDWIN DEBROIZE, Psychologist Assist; JEFF
NOWICKI, Chief of Mental Health Treatment Serv.;
TERRI MAXYMILLIAN, Ph.D., Dir. of Mental
Health Serv.; SGT. SWEET, Security Services,
CNYPC; MICHAEL HOGAN, Comm'r, Dep't of
Mental Health,

                                    Defendants.
_____

APPEARANCES:

KENNETH CARL GROVES, SR., #166237
    Plaintiff, *Pro Se*
Central New York Psychiatric Center
P.O. Box 300
Marcy, New York 13403

HON. GLENN T. SUDDABY, United States District Judge

## MEMORANDUM DECISION and ORDER

Currently before the Court, in this *pro se* civil rights action filed by Kenneth Carl Groves,

Sr. ("Plaintiff"), against numerous employees of New York State or the Central New York

Psychiatric Center ("Defendants"), are Plaintiff's motion to proceed *in forma pauperis*, his

motion for a temporary restraining order and preliminary injunction, and his motion for

appointment of counsel. (Dkt. Nos. 2, 3, 4.)[1] For the reasons set forth below, Plaintiff's motion to proceed *in forma pauperis* is granted; his motion for a preliminary injunction is denied; his motion for appointment of counsel is denied; Plaintiff's claims of deliberate indifference to his mental health needs against Defendants Bill, Carver and DeBroize are *sua sponte* dismissed with prejudice; Plaintiff's claims against Defendants Bill, Carver, DeBroize, Nowicki, Maxymillian, and Hogan arising from their alleged personal involvement in the August 8, 2011 assault are *sua sponte* dismissed without prejudice and with leave to amend in this action in accordance with Fed. R. Civ. P. 15; Sgt. Sweet is *sua sponte* dismissed without prejudice as a Defendant in this action; the Clerk is directed to issue summonses, and the U.S. Marshal is directed to effect service of process on Defendants Davis, Sill, and Nicolette.

## I.    RELEVANT BACKGROUND

On November 7, 2011, Plaintiff commenced this action *pro se* by filing a civil rights Complaint, together with a motion to proceed *in forma pauperis*. (Dkt. Nos. 1, 2.)[2] Liberally construed, Plaintiff's Complaint alleges that the following constitutional violations against him

---

[1]      This is the fourth civil rights action filed by Plaintiff in this District. Generally, two of these actions arose out of Plaintiff's refusal to consent to a strip search and the subsequent actions taken against Plaintiff as a result of his refusal. *See Groves v. New York*, 09-CV-0406, Decision and Order (N.D.N.Y. filed May 11, 2009) (Hurd, J.) (*sua sponte* dismissing complaint pursuant to 28 U.S.C. § 1915[e][2][B]); *Groves v. The State of New York*, 9:09-CV-0412, Decision and Order (N.D.N.Y. filed Mar. 26, 2010) (Sharpe, J.) (granting defendants' motion to dismiss the complaint pursuant to Fed. R. Civ. P. 12[b][6]). The third action alleged numerous violations of Plaintiff's constitutional rights during the period July 23, 2009, and August 26, 2009, and was dismissed without prejudice upon Plaintiff's request in October, 2010. *See Groves v. Maxymillian*, 9:09-CV-1002, Decision and Order (N.D.N.Y. filed Oct. 8, 2010) (Suddaby, J.). As a result, it does not appear that the current action is barred because of res judicata, collateral estoppel, and/or the rule against duplicative litigation.

[2]      At that time, Plaintiff also filed motions for injunctive relief and for appointment of counsel. (Dkt. Nos. 3, 4.)

-2-

occurred during his confinement at Central New York Psychiatric Center ("CNYPC"): (1) Defendants Davis and Sill used excessive force against him under the Eighth and/or Fourteenth Amendments; (2) Defendant Nicolette knew of and failed to take action to protect Plaintiff from the assault under the Eighth and/or Fourteenth Amendments; (3) Defendants Bill, Carver, and DeBroize were deliberately indifferent to his mental health needs under the Eighth and/or Fourteenth Amendments; and (4) Defendants Bill, Carver, DeBroize, Nowicki, Maxymillian, Bosco, and Hogan failed to "adequately train the staff under their supervision" and to take appropriate action in response to the incident. (*See generally* Dkt. No. 1.) For a more detailed description of Plaintiff's claims, and the factual allegations giving rise to those claims, the reader is referred to Part III.B of this Decision and Order.

## II.     MOTION TO PROCEED *IN FORMA PAUPERIS*

Because Plaintiff sets forth sufficient economic need, the Court finds that Plaintiff may properly commence this action *in forma pauperis*.  (Dkt. No. 2.)

## III.    *SUA SPONTE* REVIEW OF PLAINTIFF'S COMPLAINT

In light of the foregoing, the Court must now review the sufficiency of the allegations that Plaintiff has set forth in his Complaint in light of 28 U.S.C. § 1915(e)(2)(B). This is because Section 1915(e)(2)(B) directs that, when a plaintiff seeks to proceed *in forma pauperis*, "(2) . . . the court shall dismiss the case at any time if the court determines that–. . . (B) the action . . . (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B).[3]

---

[3]     The Court notes that, similarly, Section 1915A(b) directs that a court must review any "complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity" and must "identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint . . . is frivolous, malicious, or

(continued...)

### A.     Governing Legal Standard

It has long been understood that a dismissal for failure to state a claim upon which relief can be granted, pursuant to Fed. R. Civ. P. 12(b)(6), can be based on one or both of two grounds: (1) a challenge to the "sufficiency of the pleading" under Fed. R. Civ. P. 8(a)(2); or (2) a challenge to the legal cognizability of the claim. *Jackson v. Onondaga Cnty.*, 549 F. Supp.2d 204, 211, nn. 15-16 (N.D.N.Y. 2008) (McAvoy, J., adopting Report-Recommendation on *de novo* review).

Because such dismissals are often based on the first ground, a few words regarding that ground are appropriate. Rule 8(a)(2) of the Federal Rules of Civil Procedure requires that a pleading contain "a *short and plain* statement of the claim *showing* that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2) [emphasis added]. In the Court's view, this tension between permitting a "short and plain statement" and requiring that the statement "show[]" an entitlement to relief is often at the heart of misunderstandings that occur regarding the pleading standard established by Fed. R. Civ. P. 8(a)(2).

On the one hand, the Supreme Court has long characterized the "short and plain" pleading standard under Fed. R. Civ. P. 8(a)(2) as "simplified" and "liberal." *Jackson*, 549 F. Supp.2d at 212, n.20 (citing Supreme Court case). On the other hand, the Supreme Court has held that, by requiring the above-described "showing," the pleading standard under Fed. R. Civ. P. 8(a)(2) requires that the pleading contain a statement that "give[s] the defendant *fair notice* of what the plaintiff's claim is and the grounds upon which it rests." *Jackson*, 549 F. Supp.2d at 212, n.17 (citing Supreme Court cases) (emphasis added).

---

[3](...continued)
fails to state a claim upon which relief may be granted; or . . . seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b).

The Supreme Court has explained that such *fair notice* has the important purpose of "enabl[ing] the adverse party to answer and prepare for trial" and "facilitat[ing] a proper decision on the merits" by the court. *Jackson*, 549 F. Supp.2d at 212, n.18 (citing Supreme Court cases); *Rusyniak v. Gensini,* 629 F. Supp.2d 203, 213 & n.32 (N.D.N.Y. 2009) (Suddaby, J.) (citing Second Circuit cases). For this reason, as one commentator has correctly observed, the "liberal" notice pleading standard "has its limits." 2 *Moore's Federal Practice* § 12.34[1][b] at 12-61 (3d ed. 2003). For example, numerous Supreme Court and Second Circuit decisions exist holding that a pleading has failed to meet the "liberal" notice pleading standard. *Rusyniak,* 629 F. Supp.2d at 213, n.22 (citing Supreme Court and Second Circuit cases); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949-52 (2009).

Most notably, in *Bell Atlantic Corp. v. Twombly*, the Supreme Court reversed an appellate decision holding that a complaint had stated an actionable antitrust claim under 15 U.S.C. § 1. *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955 (2007). In doing so, the Court "retire[d]" the famous statement by the Court in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Twombly*, 127 S. Ct. at 1968-69. Rather than turn on the *conceivability* of an actionable claim, the Court clarified, the "fair notice" standard turns on the *plausibility* of an actionable claim. *Id*. at 1965-74. The Court explained that, while this does not mean that a pleading need "set out in detail the facts upon which [the claim is based]," it does mean that the pleading must contain at least "some factual allegation[s]." *Id*. at 1965. More specifically, the "[f]actual allegations must be enough to raise a right to relief above the speculative level [to a plausible level]," assuming (of course) that all the allegations in the complaint are true. *Id*.

As for the nature of what is "plausible," the Supreme Court explained that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S.Ct. at 1949. "[D]etermining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. . . . [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not show[n]–that the pleader is entitled to relief." *Id.* at 1950 [internal quotation marks and citations omitted]. However, while the plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully," *id.*, it "does not impose a probability requirement." *Twombly*, 550 U.S. at 556.

Because of this requirement of factual allegations plausibly suggesting an entitlement to relief, "the tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by merely conclusory statements, do not suffice." *Iqbal*, 129 S. Ct. at 1949. Similarly, a pleading that only "tenders naked assertions devoid of further factual enhancement" will not suffice. *Iqbal*, 129 S.Ct. at 1949  (internal citations and alterations omitted). Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (citations omitted).

This pleading standard applies even to *pro se* litigants. While the special leniency afforded to *pro se* civil rights litigants somewhat loosens the procedural rules governing the form of pleadings (as the Second Circuit has observed), it does not completely relieve a *pro se*

plaintiff of the duty to satisfy the pleading standards set forth in Fed. R. Civ. P. 8, 10 and 12.[4]

Rather, as both the Supreme Court and Second Circuit have repeatedly recognized, the

requirements set forth in Fed. R. Civ. P. 8, 10 and 12 are procedural rules that even *pro se* civil

rights plaintiffs must follow.[5] Stated more simply, when a plaintiff is proceeding *pro se*, "all

normal rules of pleading are not absolutely suspended." *Jackson*, 549 F. Supp.2d at 214, n.28

[citations omitted].[6]

### B.    Analysis of Plaintiff's Complaint

The Court prefaces its analysis of Plaintiff's Complaint by noting that, although Plaintiff

is a civilly committed sex offender and no longer a prisoner, the Court will look to cases

addressing prisoner's rights in analyzing Plaintiff's claims, because "confinement of civilly

committed patients is similar to that of prisoners." *Holly v. Anderson*, 04-CV-1489, 2008 WL

1773093, at *7 (D. Minn. Apr. 15, 2008); *see also Morgan v. Rabun*, 128 F.3d 694, 697 (8th Cir.

---

[4]    *See Vega v. Artus,* 610 F. Supp.2d 185, 196 & nn.8-9 (N.D.N.Y. 2009) (Suddaby, J.) (citing Second Circuit cases); *Rusyniak,* 629 F. Supp.2d at 214 & n.34 (citing Second Circuit cases).

[5]    *See Vega,* 610 F. Supp.2d at 196, n.10 (citing Supreme Court and Second Circuit cases); *Rusyniak,* 629 F. Supp.2d at 214 & n.34 (citing Second Circuit cases).

[6]    It should be emphasized that Fed. R. Civ. P. 8's plausibility standard, explained in *Twombly*, was in no way retracted or diminished by the Supreme Court's decision (two weeks later) in *Erickson v. Pardus*, in which (when reviewing a *pro se* pleading) the Court stated, "*Specific* facts are not necessary" to successfully state a claim under Fed. R. Civ. P. 8(a)(2). *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) [emphasis added]. That statement was merely an abbreviation of the often-repeated point of law–first offered in *Conley* and repeated in *Twombly*–that a pleading need not "set out *in detail* the facts upon which [the claim is based]" in order to successfully state a claim. *Twombly*, 127 S. Ct. 1965, n.3 (citing *Conley*, 355 U.S. at 47) [emphasis added]. That statement did not mean that all pleadings may achieve the requirement of "fair notice" without ever alleging any facts whatsoever. Clearly, there must still be enough fact set out (however set out, whether in detail or in a generalized fashion) to raise a right to relief above the speculative level to a plausible level. *See Rusyniak*, 629 F. Supp.2d at 214 & n.35 (explaining holding in *Erickson*).

1997) ("The governmental interests in running a state mental hospital are similar in material aspects to that of running a prison."). Thus, whereas claims of excessive force by convicted criminals are analyzed under the Eighth Amendment to the United States Constitution, because Plaintiff is a civilly committed sex offender and no longer a prisoner, his substantive rights to be free from unsafe conditions of confinement arise under the Due Process Clause of the Fourteenth Amendment. In *Youngberg v. Romeo*, 457 U.S. 307 (1982), the Court stated "[i]f it is cruel and unusual punishment to hold convicted criminals in unsafe conditions, it must be unconstitutional [under the Due Process Clause] to confine the involuntarily committed-who may not be punished at all-in unsafe conditions." *Youngberg*, 457 U.S. at 315-16. As have numerous other courts which have considered the issue, this Court has found that "the standard for analyzing a civil detainee's Fourteenth Amendment [conditions of confinement] claim is the same as the Eighth Amendment standard." *Groves v. Patterson*, 09-CV-1002, Memorandum-Decision and Order at *15-16  (N.D.N.Y. filed Nov. 18, 2009).[7]

---

[7]    *See Weyant v. Okst*, 101 F.3d 845, 856 (2d Cir. 1996) ("[W]hile the Supreme Court has not precisely limned the duties of a custodial official under the Due Process Clause to provide needed medical treatment to a pretrial detainee, it is plain that an unconvicted detainee's rights are at least as great as those of a convicted prisoner."); *Walton v. Breeyear,* 05-CV-0194, 2007 WL 446010, at *8, n.16 (N.D.N.Y. Feb. 8, 2007) (Peebles, M.J.) (noting that pretrial detainees enjoy protections under the due process clause of the Fourteenth Amendment parallel to those afforded to sentenced prisoners by the Eighth Amendment); *Vallen v. Carrol*, 02-CV-5666, 2005 WL 2296620, at **8-9 (S.D.N.Y. Sep. 20, 2005) (finding that the Eighth Amendment standard of "deliberate indifference" is the correct one for Section 1983 claims brought by involuntarily committed mental patients based on alleged failures to protect them that violated their substantive due process rights); *Bourdon v. Roney,* 99-CV-0769, 2003 WL 21058177, at *10 (N.D.N.Y. Mar. 6, 2003) (Sharpe, M.J.) ("The standard for analyzing a pretrial detainee's Fourteenth Amendment [conditions of confinement] claim is the same as the Eighth Amendment standard.").

1.      **Excessive Force Claims Against Defendants
        Davis, Still and Nicolette**

Plaintiff alleges that on August 8, 2011, Defendant Davis entered Plaintiff's dorm room

at CNYPC and "viciously attacked and brutally assaulted and battered" him. (Dkt. No. 1 at 4.)

During the course of this assault, Defendant Sill is alleged to have entered Plaintiff's room and

"jump[ed] on the plaintiff's legs holding and pinning them as Defendant Davis [continued to

beat Plaintiff]." (*Id*.) As alleged in the Complaint, although Defendant Nicolette knew in

advance that this assault was planned, he "remained in the Nurses Station" and "did nothing to

interceed [sic] or stop the brutal attack on the plaintiff." (*Id.* at 5.)

To validly assert a violation of the Eighth Amendment through the use of excessive force,

an inmate must allege the following: (1) subjectively, that the defendants acted wantonly and in

bad faith; and (2) objectively, that the defendants' actions violated "contemporary standards of

decency." *Blyden v. Mancusi*, 186 F.3d 252, 262-63 (2d Cir. 1999) (internal quotation marks

omitted) (citing *Hudson v. McMillian*, 503 U.S. 1, 8 [1992]).

Here, construing the factual allegations of Plaintiff's Complaint with special leniency, the

Court finds that Plaintiff appears to have alleged facts plausibly suggesting that he was subjected

to excessive force by Defendants Davis and Sill. In addition, by alleging that Defendants Davis,

Sill and Nicolette discussed the assault in advance of it occurring, and that Nicolette was in the

vicinity of Plaintiff's room and had an opportunity to intervene to prevent it, the Complaint

sufficiently alleges that Defendant Nicolette was personally involved and/or failed to protect

Plaintiff from the assault. *See Bhuiyan v. Wright*, 06-CV-0409, 2009 WL 3123484, at *7

(N.D.N.Y. Sept. 29, 2009) (Scullin, J.) ("The fact that defendant Davis was not in the room, but

was acting as a 'lookout' so that no one came into the room while plaintiff was being beaten,

would not absolve him from liability for the assault. An officer's failure to intervene during another officer's use of excessive force can itself constitute an Eighth Amendment violation unless the assault is "sudden and brief," and the defendant had no real opportunity to prevent it."); *Jeffreys v. Rossi*, 275 F. Supp.2d 463, 474 (S.D.N.Y. 2003) (holding that an officer may be personally involved in the use of excessive force if he either directly participates in the assault or if he was present during the assault, yet failed to intervene on behalf of the victim, even though the officer had a reasonable opportunity to do so).

As a result, a response to these claims is required from Defendants David, Sill, and Nicolette.  In so ruling, the Court expresses no opinion as to whether Plaintiff's claims can withstand a properly filed motion to dismiss or for summary judgment.

### 2.   Deliberate Indifference Claims Against Defendants Bill, Carver and DeBroize

Plaintiff alleges that on August 9, 2011, the day after the alleged assault, he attempted to "discuss the incident and what transpired" with Defendants Bill and Carver.  (Dkt. No. 1 at 5.) Plaintiff alleges that Defendant Bill told him, "I don't want to discuss this Mr. Groves, we're too busy for your foolishness and the matter is being investigated." (*Id*.) Plaintiff's effort to explain that he was frightened by the incident was rebuffed by Defendant Bill, who told Plaintiff to "grow up." (*Id*. at 5-6.) The following day, Plaintiff attempted to discuss the incident with Defendant Carver, his primary therapist, again without success. A further attempt at discussion later that day was met with Defendant Carver "stating to the plaintiff in a snotty tone 'grow the hell up!'" (*Id*. at 6.) On August 10, 2011, Plaintiff attempted to discuss the incident "and his current fears and feelings," during his Monday afternoon "Process Group," which is facilitated by Defendant DeBroize. As alleged, Defendant DeBroize told Plaintiff and the other group

members that the matter was under investigation "so no one could discuss the incident with anyone." (*Id*. at 6.)

 To state a claim of deliberate indifference to a serious medical and/or mental health need under the Eighth Amendment, a plaintiff must first allege facts plausibly suggesting that prison officials acted with "deliberate indifference to serious medical needs." *Estelle v. Gamble,* 429 U.S. 97, 104 (1976). "[T]he plaintiff must allege conduct that is 'repugnant to the conscience of mankind' or 'incompatible with the evolving standards of decency that mark the progress of a maturing society.'" *Ross v. Kelly,* 784 F.Supp. 35, 44 (W.D.N.Y.), *aff'd,* 970 F.2d 896 (2d Cir.1992) (quoting *Estelle v. Gamble,* 429 U.S. at 102, 105–06). The "deliberate indifference standard embodies both an objective and a subjective prong," both of which the plaintiff must establish. *Hathaway v. Coughlin,* 37 F.3d 63, 66 (2d Cir. 1994), *cert. denied*, 513 U.S. 1154 (1995). "First, the alleged deprivation must be, in objective terms, 'sufficiently serious.'" *Id*. (citations omitted). Second, the defendant "must act with a sufficiently culpable state of mind." *Id.*

 With regard to the first element, generally, to be sufficiently serious for purposes of the Constitution, a medical condition must be "a condition of urgency, one that may produce death, degeneration, or extreme pain." *Nance v. Kelly,* 912 F.2d 605, 607 (2d Cir. 1990) (Pratt, J. dissenting) [citations omitted], *accord*, *Hathaway*, 37 F.3d at 66; *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998).).[8] Under the subjective component, a plaintiff must also allege facts plausibly suggesting that the defendant acted with "a sufficiently culpable state of mind."

---

  [8] Relevant factors informing this determination include whether the plaintiff suffers from an injury that a "reasonable doctor or patient would find important and worthy of comment or treatment," a condition that "significantly affects" a prisoner's daily activities, or "the existence of chronic and substantial pain." *Chance,* 143 F.3d at 702.

*Hathaway,* 37 F.3d at 66. The requisite culpable mental state is similar to that of criminal recklessness. *Wilson v. Seiter,* 501 U.S. 294, 301–03 (1991). A physician's negligence in treating or failing to treat a prisoner's medical condition does not implicate the Eighth Amendment and is not properly the subject of a Section 1983 action. *Estelle,* 429 U.S. at 105-06; *Chance,* 143 F.3d at 703.[9]

Here, even when construed with the utmost special liberality, Plaintiff's Complaint fails to allege facts plausibly suggesting that Defendants Bill, Carver, and DeBroize acted with deliberate indifference to Plaintiff's serious mental health condition when they declined to discuss the incident of August 8, 2011.  There is nothing in the Complaint that even remotely suggests that the requested conversations were integral to Plaintiff's treatment as a convicted sex offender involuntarily committed to CNYPC, or that Defendants' refusal to discuss the incident with Plaintiff when he requested to do so caused Plaintiff to suffer any harm or worsening of his condition. In addition, Plaintiff does not allege that any of these Defendants acted with the requisite culpable state of mind.

---

[9]      Thus, a physician who "delay[s] . . . treatment based on a bad diagnosis or erroneous calculus of risks and costs" does not exhibit the mental state necessary for deliberate indifference. *Harrison,* 219 F.3d at 139. Likewise, an inmate who disagrees with the physician over the appropriate course of treatment has no claim under Section 1983 if the treatment provided is "adequate." *Chance,* 143 F.3d at 703. The word "adequate" reflects the reality that "[p]rison officials are not obligated to provide inmates with whatever care the inmates desire. Rather, prison officials fulfill their obligations under the Eighth Amendment when the care provided is 'reasonable.'" *Jones v. Westchester Cnty. Dept. of Corr.*, 557 F. Supp. 2d 408, 413 (S.D.N.Y. 2008). In addition, "disagreements over medications, diagnostic techniques (e.g., the need for X-rays), forms of treatment, or the need for specialists or the timing of their intervention are not adequate grounds for a section 1983 claim." *Sonds v. St. Barnabas Hosp. Corr. Health Servs.*, 151 F. Supp. 2d 303, 312 (S.D.N.Y. 2001). However, if prison officials consciously delay or otherwise fail to treat an inmate's serious medical condition "as punishment or for other invalid reasons," such conduct constitutes deliberate indifference. *Harrison*, 219 F.3d at 138.

Moreover, the statements made by Defendants Bill and Carver that he should "grow up," even if construed as verbal harassment, do not give rise to a cognizable claim that may be pursued under Section 1983. Allegations of verbal harassment are insufficient to support a Section 1983 claim. *Johnson v. Eggersdorf*, 8 F. App'x 140, 143 (2d Cir. 2001); *see also Purcell v. Coughlin*, 790 F.2d 263, 265 (2d Cir. 1986) ("[A]llegations of verbal harassment are insufficient to base a § 1983 claim if no  specific injury is alleged.").

For these reasons, Plaintiff's deliberate indifference claims against Defendants Bill, Carver, and DeBroize are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and Fed. R. Civ. P. 12(b)(6).  Moreover, because the Court cannot imagine how Plaintiff might correct this claim through better pleading, he is not granted leave to attempt to do so in an amended pleading.[10] Rather, this claim is hereby dismissed with prejudice.

### 3. Failure to Supervise Claims Against Defendants Bill, Carver, DeBroize, Nowicki, Maxymillian, and Hogan

To prevail on a claim under 42 U.S.C. § 1983, a defendant must be personally involved in the plaintiff's constitutional deprivation. *McKinnon v. Patterson*, 568 F.2d 930, 934 (2d Cir. 1977). Generally, for purposes of 42 U.S.C. § 1983, supervisory personnel may be considered "personally involved" only if they (1) directly participated in the violation, (2) failed to remedy

---

[10]     The Court notes that, generally, leave to amend pleadings shall be freely granted when justice so requires. Fed. R. Civ. P. 15(a). However, an opportunity to amend is not required where amendment would be futile. *John Hancock Mut. Life Ins. Co. v. Amerford Int'l Corp.*, 22 F.3d 458, 462 (2d Cir. 1994). *John Hancock Mut. Life Ins. Co.,* 22 F.3d at 462. The Second Circuit has explained that "[w]here it appears that granting leave to amend is unlikely to be productive, . . . it is not an abuse of discretion to deny leave to amend." *Ruffolo v. Oppenheimer & Co.,* 987 F.2d 129, 131 (2d Cir. 1993); *see Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) ("The problem with [Plaintiff's] cause of action is substantive; better pleading will not cure it. Repleading would thus be futile. Such a futile request to replead should be denied."). This rule is applicable even to *pro se* plaintiffs. *See, e.g., Cuoco*, 222 F.3d at 103.

that violation after learning of it through a report or appeal, (3) created, or allowed to continue, a policy or custom under which the violation occurred, (4) had been grossly negligent in managing subordinates who caused the violation, or (5) exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that the violation was occurring.[11]

Holding a position in a hierarchical chain of command, without more, is insufficient to support a showing of personal involvement. *McKinnon*, 568 F.2d at 934. Rather, a plaintiff must demonstrate "'a tangible connection between the acts of the defendant and the injuries suffered.'" *Austin v. Pappas*, 04-CV-7263, 2008 WL 857528, at *2 (S.D.N.Y. Mar. 31, 2008) (quoting *Bass v. Jackson*, 790 F.2d 260, 263 [2d Cir. 1986]) (other citation omitted). An official's failure to respond to grievance letters from inmates, however, "does not establish supervisory liability." *Watson v. McGinnis*, 964 F. Supp. 127, 130 (S.D.N.Y. 1997).[12] Moreover, "the law is clear that inmates do not enjoy a constitutional right to an investigation of any kind by government officials." *Pine v. Seally*, 9-CV-1198, 2011 WL 856426, at *9

---

[11]     *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995) (adding fifth prong); *Wright*, 21 F.3d at 501 (adding fifth prong); *Williams v. Smith*, 781 F.2d 319, 323-324 (2d Cir. 1986) (setting forth four prongs).

[12]     *See also Gillard v. Rosati*, 08-CV-1104, 2011 WL 4402131, at *7 (N.D.N.Y. Aug. 22, 2011) (Peebles, J.) ("It is well-established that without more, 'mere receipt of letters from an inmate by a supervisory official regarding a medical claim is insufficient to constitute personal liability." [internal quotation marks and brackets omitted]); *Greenwaldt v. Coughlin*, 93-CV- 6551, 1995 WL 232736, at *4 (S.D.N.Y. Apr. 19, 1995) ("it is well-established that an allegation that an official ignored a prisoner's letter of protest and request for an investigation of allegations made therein is insufficient to hold that official liable for the alleged violations."); *Clark v. Coughlin*, 92-CV 0920, 1993 WL 205111, at *5 n.2 (S.D.N.Y. Jun. 10, 1993) ("Courts in this jurisdiction have consistently held that an inmate's single letter does not constitute the requisite personal involvement in an alleged constitutional deprivation to trigger the Commissioner's liability.")

(N.D.N.Y. Feb. 4, 2011).[13]

In his Complaint, Plaintiff alleges in wholly conclusory terms that Defendants Bill, Carver, DeBroize, Nowicki, Maxymillian, and Hogan failed to "adequately train the staff under their supervision and fail[ed] to act within the scope and training of the position and job title they hold." (Dkt. No. 1 at 8.) Plaintiff alleges that he submitted a letter of complaint to Defendant Hogan and wrote to Defendant Nowicki on several occasions expressing concern his complaint had not been responded to, only to be advised that in September, 2011 that an investigation was ongoing. (*Id*. at 6-7.)  Plaintiff does not allege that any of these Defendants personally participated in the alleged assault on August 8, 2011.

Here, even when construed with the utmost special liberality, Plaintiff's Complaint fails to allege facts plausibly suggesting any personal involvement by these Defendants in the alleged used of excessive force on August 8, 2011. As a result, Plaintiff's claims against Defendants Bill, Carver, DeBroize, Nowicki, Maxymillian, and Hogan arising from this incident are *sua sponte* dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and Fed. R. Civ. P. 12(b)(6). This dismissal is without prejudice to Plaintiff's right to file an Amended Complaint that corrects the above-described pleading defects, and states a viable claim against these Defendants. The Court notes that, at this early stage of the case, Plaintiff has the right–without leave of the Court–to file an Amended Complaint within the time limits established by Fed. R. Civ. P. 15(a)(1)(B). However, if he seeks to file an Amended Complaint after those time limits, he must file a motion for leave to file an Amended Complaint in accordance with Fed. R. Civ. P. 15(a)(2).  In either event, Plaintiff is advised that <u>any Amended Complaint must be a complete pleading that will replace</u>

---

[13]       *See also Bernstein v. N.Y.*, 591 F. Supp.2d 448, 460 (S.D.N.Y. 2008) ("Courts within the Second Circuit have determined that there is no constitutional right to an investigation by government officials." [internal quotation marks, brackets and ellipsis omitted]).

and supersede the original Complaint in its entirety, and that may not incorporate by reference any portion of the original Complaint.  *See* N.D.N.Y. L.R. 7.1(a)(4).

Finally, although Plaintiff names Sgt. Sweet as a Defendant in the caption of the complaint and in the listing of the parties, he has not set forth in the Complaint any allegations of fact regarding the conduct of this Defendant complained of. (*See generally* Dkt. No. 1.) As a result, the Complaint fails to state a claim upon which relief may be granted and Sgt. Sweet is dismissed from this action without prejudice to Plaintiff's right to file an Amended Complaint as set forth above.

### IV.      MOTION FOR INJUNCTIVE RELIEF

A preliminary injunction is an "extraordinary remedy that should not be granted as a routine matter." *Patton v. Dole*, 806 F.2d 24, 28 (2d Cir. 1986). In most cases, to warrant the issuance of a preliminary injunction, a movant must show (a) irreparable harm and (b) either (1) a likelihood of success on the merits of the claim or (2) sufficiently serious questions going to the merits, and a balance of hardships tipping decidedly in favor of the moving party. *D.D. ex rel. V.D. v. New York City Bd. of Educ.*, 465 F.3d 503, 510 (2d Cir. 2006) (quotation omitted). "The purpose of issuing a preliminary injunction is to 'preserve the status quo and prevent irreparable harm until the court has an opportunity to rule on the . . . merits.'" *Candelaria v. Baker*, 00-CV- 912, 2006 WL 618576, at *3 (W.D.N.Y. Mar. 10, 2006) (quoting *Devose v. Herrington,* 42 F.3d 470, 471 [8th Cir. 1994]). Preliminary injunctive relief "'should not be granted unless the movant, by a clear showing, carries the burden of persuasion.'" *Moore v. Consolidated Edison Co. of New York, Inc.*, 409 F.3d 506, 510 (2d Cir. 2005) (quoting *Mazurek v. Armstrong*, 520 U.S. 968, 972 [1997]). "Where there is an adequate remedy at law, such as an award of money damages, injunctions are unavailable except in extraordinary circumstances."

*Moore*, 409 F.3d at 510 (citing *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 381 (1992).

The same standards govern consideration of an application for a temporary restraining order.

*Perri v. Bloomberg*, 06-CV-0403, 2008 WL 2944642, at *2 (E.D.N.Y. Jul. 31, 2008) [citation

omitted]. The district court has broad discretion in determining whether to grant a preliminary

injunction. *Moore*,  409 F.3d at 511.

        "The Second Circuit has defined 'irreparable harm' as 'certain and imminent harm for

which a monetary award does not adequately compensate,' noting that 'only harm shown to be

non-compensable in terms of money damages provides the basis for awarding injunctive relief.'"

*Perri*, 2008 WL 2944642, at * 2 (citing *Wisdom Import Sales Co., L.L.C. v. Labatt Brewing Co.,

Ltd.,* 339 F.3d 101, 113-14 [2d Cir. 2003]); *see also Kamerling v. Massanari*, 295 F.3d 206, 214

(2d Cir. 2002) ("To establish irreparable harm, a party seeking preliminary injunctive relief must

show that there is a continuing harm which cannot be adequately redressed by final relief on the

merits and for which money damages cannot provide adequate compensation.") (internal

quotation omitted). Speculative, remote or future injury is not the province of injunctive relief.

*Los Angeles v. Lyons*, 461 U.S. 95, 111-12 (1983); *see also Hooks v. Howard*, 07-CV-0724,

2008 WL 2705371, at *2 (N.D.N.Y. Jul. 3, 2008) (citation omitted) ("Irreparable harm must be

shown to be imminent, not remote or speculative, and the injury must be such that it cannot be

fully remedied by monetary damages.").

        Plaintiff has submitted a document entitled "Order to Show Cause for Preliminary

Injunction and Tempor[ary] Restraining Order." (Dkt. No. 3.) Construed liberally, Plaintiff's

submission seeks a temporary restraining order and injunctive relief enjoining Defendants from

"submitting and filing false and untrue statements and reports" regarding the August 11, 2011

incident, and to "stop all retaliatory actions against the plaintiff . . . ." (*Id*. at 1.) Plaintiff also

-17-

seeks an "Order of Seperation [sic]" directing that Defendants Davis, Sill, Nicolette, Bill, Carver and DeBroize be "restrained from being within 100 feet from the plaintiff in any form or matter." (*Id.* at 2.)

The Court has reviewed Plaintiff's motion papers thoroughly and considered the claims asserted therein in the light most favorable to Plaintiff, as a *pro se* litigant. Based upon that review, the Court finds that the harm Plaintiff alleges is purely speculative and, therefore, not "irreparable." Plaintiff's motion is supported only by a recitation of the alleged assault in August, 2011.  (*Id.* at 1-4.) Plaintiff has not supported the claims of ongoing misconduct set forth in his motion papers with any factual allegations, such as the dates on which the misconduct occurred, the nature of the injuries he claims to have suffered, the identities of the persons responsible for the conduct he seeks to enjoin, or the relationship between those actions and the claims asserted in his Complaint. Simply stated, Plaintiff's alleged fear of future wrongdoing by the Defendants is not sufficient to warrant the extraordinary remedy of preliminary injunctive relief.

The Court further notes that the requested injunctive relief cannot be granted unless there is also proof that Plaintiff has a likelihood of succeeding on the merits of his claim, or evidence that establishes sufficiently serious questions going to the merits of his claim and a balance of hardships tipping decidedly toward him. *See Covino v. Patrissi,* 967 F.2d 73, 77 (2d Cir. 1992). Plaintiff has failed to submit *proof or evidence* that meets this standard. Plaintiff's allegations, standing alone, are not sufficient to entitle him to preliminary injunctive relief. *See Ivy Mar Co. v. C.R. Seasons Ltd.,* 907 F. Supp. 547, 561 (E.D.N.Y. 1995) ("[B]are allegations, without more, are insufficient for the issuance of a preliminary injunction."); *Hancock v. Essential Resources, Inc.,* 792 F. Supp. 924, 928 (S.D.N.Y. 1992) ("Preliminary injunctive relief cannot rest on mere

hypotheticals."). Without evidence to support his claims that he is in danger from the actions of anyone at CNYPC, the Court will not credit Plaintiff's conclusory allegations that he will be retaliated against or harmed in the future.

Plaintiff has failed to establish either of the two requisite elements discussed above. As a result, Plaintiff's request for a temporary restraining order and/or injunctive relief is denied.

## V.   MOTION FOR APPOINTMENT OF COUNSEL

Courts cannot utilize a bright-line test in determining whether counsel should be appointed on behalf of an indigent party. *Hendricks v. Coughlin*, 114 F.3d 390, 392-93 (2d Cir. 1997). Instead, a number of factors must be carefully considered by the court in ruling upon such a motion:

> [T]he district judge should first determine whether the indigent's position seems likely to be of substance. If the claim meets this threshold requirement, the court should then consider the indigent's ability to investigate the crucial facts, whether conflicting evidence implicating the need for cross examination will be the major proof presented to the fact finder, the indigent's ability to present the case, the complexity of the legal issues and any special reason in that case why appointment of counsel would be more likely to lead to a just determination.

*Terminate Control Corp. v. Horowitz*, 28 F.3d 1335, 1341 (2d Cir. 1994) (quoting *Hodge v. Police Officers*, 802 F.2d 58, 61 [2d Cir. 1986]). This is not to say that all, or indeed any, of these factors are controlling in a particular case.[14] Rather, each case must be decided on its own facts.  *Velasquez v. O'Keefe*, 899 F. Supp. 972, 974 (N.D.N.Y. 1995) (McAvoy, C.J.) (citing *Hodge*, 802 F.2d at 61).

---

[14]     For example, a plaintiff's motion for counsel must always be accompanied by documentation that substantiates his efforts to obtain counsel from the public and private sector, and such a motion may be denied solely on the failure of the plaintiff to provide such documentation. *See Terminate Control Corp. v. Horowitz*, 28 F.3d 1335, 1341 (2d Cir. 1994); *Cooper v. Sargenti Co., Inc.*, 877 F.2d 170, 172, 174 (2d Cir. 1989) [citation omitted].

Upon due consideration, the Court finds that the relevant factors weigh decidedly against granting Plaintiff's motion at this time. For example, the Court finds as follows: (1) the case does not present novel or complex issues; (2) it appears to the Court as though, to date, Plaintiff has been able to effectively litigate this action; (3) while it is possible that there will be conflicting evidence implicating the need for cross-examination at the time of the trial, as is the case in many actions brought under 42 U.S.C. § 1983 by *pro se* litigants, "this factor alone is not determinative of a motion for appointment of counsel," *Velasquez*, 899 F. Supp. at 974; (4) if this case survives any dispositive motions filed by Defendants, it is highly probable that this Court will appoint trial counsel at the final pretrial conference; (5) this Court is unaware of any special reasons why appointment of counsel at this time would be more likely to lead to a just determination of this litigation; and (6) Plaintiff's motion for counsel is not accompanied by documentation that substantiates his efforts to obtain counsel from the public and private sector.

For these reasons, Plaintiff's motion for the appointment of counsel is denied without prejudice. After the Defendants have responded to the allegations in the Complaint which survive *sua sponte* review, and the parties have undertaken discovery, Plaintiff may file a second motion for the appointment of counsel, at which time the Court may be better able to determine whether such appointment is warranted in this case. Plaintiff is advised that any second motion for appointment of counsel must be accompanied by documentation that substantiates his efforts to obtain counsel from the public and private sector.

     **ACCORDINGLY**, it is

     **ORDERED** that Plaintiff's motion to proceed *in forma pauperis* (Dkt. No. 2) is **GRANTED**;[15] and it is further

---

[15]    Plaintiff should note that he will still be required to pay fees that he may incur in this action, including but not limited to copying and/or witness fees.

**ORDERED** that Plaintiff's motion for injunctive relief (Dkt. No. 3) is **DENIED**; and it is further

**ORDERED** that Plaintiff's motion for appointment of counsel (Dkt. No. 4) is **DENIED without prejudice**; and it is further

**ORDERED** that Plaintiff's claims of deliberate indifference against Defendants Bill, Carver and DeBroize are *sua sponte* **DISMISSED with prejudice** pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and Fed. R. Civ. P. 12 (b)(6); and it is further

**ORDERED** that Plaintiff's claims against Defendants Bill, Carver, DeBroize, Nowicki, Maxymillian, and Hogan arising from their alleged personal involvement in the August 8, 2011 incident are *sua sponte* **DISMISSED without prejudice and with leave to amend** in this action in accordance with Fed. R. Civ. P. 15 (as described above in Part III.B.3. of this Decision and Order), pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and Fed. R. Civ. P. 12(b)(6); and it is further

**ORDERED** that Defendant Sweet is *sua sponte* **DISMISSED without prejudice and with leave to be reinstated** as a Defendant in this action in accordance with Fed. R. Civ. P. 15, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and Fed. R. Civ. P. 12(b)(6); and it is further

**ORDERED** that Plaintiff's Complaint (Dkt. No. 1) is otherwise accepted for filing (i.e., as to the claims against Defendants Davis, Sill, and Nicolette arising from the August 8, 2011 incident); and it is further

**ORDERED** that Plaintiff provide a summons, USM-285 form and a copy of the complaint for Defendant Davis, Sill and Nicollette for service, and upon receipt from Plaintiff of the documents required for service of process, the Clerk shall (1) issue summonses and forward them, along with copies of the Complaint to the United States Marshal for service upon the remaining Defendants, and (2) forward a copy of the summons and Complaint by mail to the

Office of the New York State Attorney General, together with a copy of this Decision and Order; and it is further

**ORDERED** that, after service of process on Defendants, a response to the Complaint shall be filed by the Defendants or their counsel as provided for in the Federal Rules of Civil Procedure; and it is further

**ORDERED** that all pleadings, motions and other documents relating to this action be filed with the Clerk of the United States District Court, Northern District of New York, 7th Floor, Federal Building, 100 S. Clinton St., Syracuse, New York 13261-7367. **Any paper sent by a party to the Court or the Clerk must be accompanied by a certificate showing that a true and correct copy of it was mailed to all opposing parties or their counsel. Any document received by the Clerk or the Court which does not include a certificate of service showing that a copy was served upon all opposing parties or their attorneys will be stricken from the docket.** Plaintiff must comply with any requests by the Clerk's Office for any documents that are necessary to maintain this action. All parties must comply with Local Rule 7.1 of the Northern District of New York in filing motions. **Plaintiff is also required to promptly notify, in writing, the Clerk's Office and all parties or their counsel of any change in Plaintiff's address; his failure to so may result in the dismissal of this action.** All motions will be decided on submitted papers without oral argument unless otherwise ordered by the Court.

Dated: February 28, 2012
        Syracuse, New York

Hon. Glenn T. Suddaby
U.S. District Judge