**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

KENNETH CARL GROVES, SR.,

                              Plaintiff,

         - v -                                             Civ. No. 9:11-CV-1317
                                                                    (GTS/RFT)
BRETT DAVIS, *Secure Care Treatment Aid*,
DAVID W. SILL, *Secure Care Treatment Aid*,
THOMAS NICOLETTE, *R.N., Ward Nurse*,

                              Defendants.

**APPEARANCES:**                                 **OF COUNSEL:**

**KENNETH CARL GROVES, SR.**
Plaintiff, *Pro Se*
166237
Central New York Psychiatric Center
P.O. Box 300
Marcy, NY 13403

**HON. ERIC T. SCHNEIDERMAN**              **COLLEEN D. GALLIGAN, ESQ.**
Attorney General of the State of New York        Assistant Attorney General
Attorney for Defendants Sill & Nicolette
The Capitol
Albany, NY 12224

**ARMOND J. FESTINE, ESQ.**
City of Utica – Corporation Counsel
Attorney for Defendant Davis
1 Kennedy Plaza, 2nd Floor
Utica, NY 13502

**HON. RANDOLPH F. TREECE**
**United States Magistrate Judge**

## <u>REPORT-RECOMMENDATION and ORDER</u>

        *Pro se* Plaintiff Kenneth Carl Groves, Sr., brings this Complaint, pursuant to 42 U.S.C. §

1983, alleging that Defendants violated his constitutional rights under the Fourth and Fourteenth

Amendments by conspiring to physically assault him, physically assaulting him, and/or failing to protect him from physical assault while he was a resident at the Central New York Psychiatric Center ("CNYPC") in Marcy, New York. *See generally* Dkt. No. 1, Compl. Now before this Court are two separate Motions for Summary Judgment. *See generally* Dkt. Nos. 52, Defs.' Mot. for Sum. J. (hereinafter "Davis Mot."), & 55, Mot. for Sum. J. (hereinafter "Sill & Nicolette Mot."). Plaintiff opposes the Motions. Dkt. Nos. 59-1, Pl.'s Mem. of Law, & 60, Pl.'s Exs.[1] Also before this Court is Plaintiff's Motion to Amend/Supplement his Complaint, Dkt. No. 62, and Motion to proceed *In forma Pauperis* ("IFP"), Dkt. No. 63. All three Defendants oppose Plaintiff's Motion to Amend. Dkt. Nos. 65, Def.'s Opp'n (hereinafter "Davis Opp'n"), & 66 Defs.' Opp'n (hereinafter "Sill & Nicolette Opp'n"). For the reasons that follow, it is **RECOMMENDED** that both Motions for Summary Judgment be **DENIED**, and it is **ORDERED** that Plaintiff's Motion to Amend and Motion to Proceed IFP be **DENIED.**

## I. BACKGROUND

Plaintiff has been a civilly committed resident of the CNYPC in Marcy, New York, and a participant in its Sex Offender Treatment Program ("SOTP"), since June 18, 2008. Dkt. No. 59-2, Pl.'s Statement Pursuant to Rule 7.1(a)(3) (hereinafter "Pl.'s 7.1 Statement"), at ¶¶ 1–2; Dkt. No. 52-3, Def.'s Statement Pursuant to Rule 7.1(a)(3) ("hereinafter "Davis 7.1 Statement"), at ¶¶ 1–2; Dkt. No. 55-1, Defs.' Statement Pursuant to Rule 7.1(a)(3) (hereinafter "Sill & Nicolette 7.1 Statement"), at ¶ 1. It is undisputed by all parties that, on August 8, 2011, a physical incident occurred involving Plaintiff and Defendants Brett Davis and David Sill, both secure care treatment aids ("SCTA") at CNYPC. *See* Sill & Nicolette Mot., Ex. C, Kenneth Carl Groves, Sr., Dep., dated

---

[1] The Court liberally construes Plaintiff's Opposition as opposing both Motions.

Jan. 3, 2012 (hereinafter "Groves Dep."), at p. 35; Davis 7.1 Statement at ¶ 4; Sill & Nicolette 7.1 Statement at ¶ 6. It is further undisputed by the parties that following this incident Plaintiff was convicted of harassment in the second degree in Marcy Town Court. Sill & Nicolette Mot., Ex. A., Cert. of Conviction, dated August 19, 2013; Groves Dep. at pp. 26–28. Additionally, formal disciplinary charges were filed against Defendant Davis by his employer on November 21, 2011, which ultimately led to binding arbitration between CNYPC and Defendant Davis. Davis 7.1 Statement at ¶¶ 10 & 13; Davis Mot., Ex. 3, Arbitration Op. & Award, dated Mar. 1, 2013. Notwithstanding their agreement as to the foregoing, the parties' accounts materially differ with regard to the details of the relevant events.

### A. Parties' Versions of Relevant Events

#### 1. Plaintiff's Account

According to Plaintiff's Deposition testimony, the following occurred on August 8, 2011: At approximately 5:30 p.m., while walking from the dayroom to his own room with Mr. Yelle, a fellow CNYPC resident, Plaintiff stated that "[Defendant Davis is] always trying to intimidate people walking around with his chest puffed out." Groves Dep. at pp. 45–46. Defendant Davis overheard this comment and "came running up the ward . . . stopped [Plaintiff] in the hallway, got in [his] face and started yelling at [him], saying . . . that if [he] didn't watch [his] mouth, . . . [he]'d get [his] ass kicked." *Id.* at pp. 46–47. Plaintiff replied, "okay" or "you got it" and went to his room; there was no physical interaction between the parties at that time. *Id.* at pp. 47–48. Defendant Nicolette, a nurse at CNYPC, was standing outside of his door and observed the incident. *Id.* at p. 48.

Later that evening, at approximately 6:00 p.m., Plaintiff went to the yard for recreation with the rest of the residents in his ward; the residents were accompanied by Defendants Davis, Sill, and

Nicolette. *Id.* at pp. 50–51. Plaintiff noticed that Defendants Davis, Sill, and Nicolette were "talking to each other at another table, [and] looking directly at [him]." *Id.* at pp. 51 & 69–70. Although Plaintiff acknowledges that he could not hear what was being discussed between the Defendants "[he] believe[s] – and [he] feel[s] that they were talking about the incident and what was going to happen." *Id.* at pp. 70–71.

At about 8:00 p.m., after returning from the yard, Defendant Nicolette began distributing medications to the residents in the dayroom. *Id.* at p. 51. Plaintiff told Defendant Nicolette that he did not want Defendant Davis to pour his water, and Defendant Davis told Plaintiff that if he did not take his pills he would be cited for refusing to take his medication. *Id.* at pp. 51–52, & 55. Plaintiff took his medication (but not the water offered by Defendant Davis), and while returning to the dayroom, stated that "[he] wouldn't be in here forever." *Id.* at pp. 55–56. Plaintiff remained in the dayroom watching television until approximately 8:30, when he returned to his room. *Id.* at pp. 57–58.

At approximately 9:30 p.m., while Plaintiff was seated at his desk in his room, his "door fl[ew] open," Plaintiff turned in his chair and saw Defendant Davis "flying across the room." *Id.* at pp. 63–64. Defendant Davis hit him in the right side of his temple with his left fist, knocking Plaintiff out of his chair and onto the bed, then Davis jumped on top of Plaintiff and started punching him in the face and the side of his head. *Id.* at p. 64. Defendant Davis continued punching Plaintiff and the two rolled onto the floor between the bed and the desk. *Id.* Defendant Davis was screaming "[g]et the bed! He beat me! Help! Help! He's hitting me!," while holding Plaintiff in a headlock

and continuing to beat the Plaintiff. At this time, Defendant Sill[2] came in and grabbed Plaintiff by the ankles, holding him down – while Davis continued to punch Plaintiff – until other SCTAs entered the room. *Id.* at pp. 64–65; *see also* Dkt. No. 59-1, Pl.'s Mem. of Law at p. 1. Despite knowing that the incident would occur, Defendant Nicolette remained in the nurses office until after Defendant Sill called for further help. Groves Dep. at p. 72–73.

As a result of the altercation, Plaintiff suffered a black eye, a bruise under his right eye, redness on his temple and the side of his face, bloodshot eyes, and trouble seeing out of one eye; however his vision problems have now all but subsided. *Id.* at pp. 73–75; *see also* Compl., Exs. 1 & 2, Pictures.

### 2. Defendant Davis's Account

Defendant Davis acknowledges that a non-physical interaction occurred at 5:30 p.m. on August 8, 2011, however, he does not further elaborate as to the details of that interaction. Davis 7.1 Statement at ¶ 4. Davis also acknowledges that a physical altercation occurred between himself and Plaintiff at approximately 9:00 p.m. the same day, and that during that altercation, "Plaintiff was taken down to the floor and sustained bruises to his face." *Id.* at ¶¶ 6 & 7. However, Davis's account materially differs from that of the Plaintiff in that he asserts that the altercation began when "Plaintiff[] grabb[ed] [his] shirt as he walked by the [Plaintiff's] room entrance, and pull[ed] him toward the inside of the room." *Id.* at ¶ 6. That is when he took Plaintiff down to the ground and called for help. *Id.* at ¶ 7. The first person to respond was Defendant Sill, who assisted Davis in restraining Plaintiff until additional staff responded to the scene. *Id.*

---

[2] Plaintiff was unable to see who grabbed his legs during the incident, however, he later learned that it was Defendant Sill. Groves Dep. at pp. 65–66.

### 3. Account of Defendants Sill & Nicolette

Defendants Sill and Nicolette also acknowledge that an altercation between Defendant Davis and Plaintiff occurred at approximately 9:30 p.m. on August 8, 2011, and that prior to that event "Plaintiff had several interactions with CNYPC staff." Sill & Nicolette 7.1 Statement at ¶ 6. During the 5:30 interaction, "Plaintiff made some unkind remarks about Defendant Davis. . . . Defendant Davis overheard these remarks and words were exchanged. . . . [However,] [n]either Defendant Sill nor Defendant Nicolette were involved in the 5:30 exchange." *Id.* at ¶ 7. Defendants Sill and Nicolette further acknowledge that they were in the yard with Defendant Davis and Plaintiff between 5:45 and 7:45 p.m. that evening, and that although they were "speaking to one another and looking in Plaintiff's direction, Plaintiff did not hear, and does not know what Defendants were saying." *Id.* at ¶ 8. They further acknowledge that, while Nurse Nicolette was distributing medication after recreation, "[w]ords were exchanged between Plaintiff and Defendant Davis." *Id.* at ¶¶ 11–14.

As for the altercation which occurred around 9:30 p.m., Defendants Sill and Nicolette maintain that while Plaintiff was in his room, Defendant Davis was walking the dormitory hallway doing a check of the dorm rooms. *Id.* at ¶¶ 16–17. Defendant Sill was sitting near the nurses' station at the opposite end of the hallway from Plaintiff's dorm room watching Defendant Davis as he checked the residents' rooms. *Id.* at ¶¶ 18–19. It looked to Defendant Sill like "[Plaintiff] was either poking or grabbing [Defendant Davis] and the next thing [he] kn[e]w, Mr. Davis was in [Plaintiff's] room." *Id.* at ¶ 20. Defendant Sill could not see what was happening in Plaintiff's dorm room, but, at the point that Davis disappeared from his view, he ran down the hallway, yelled for another SCTA

who was in the dayroom, and dropped a "red phone"[3] as he continued down the hallway to Plaintiff's room. *Id.* at ¶¶ 21–22. When he arrived at the room he saw "Mr. Davis and [Plaintiff] on the floor between the bed and the desk. They were laying on the left side. Mr. Davis had [Plaintiff] in a wrap, . . . [and Defendant Sill] immediately grabbed Plaintiff's legs and waited for help." *Id.* at ¶¶ 23–24. "Plaintiff struggled a little bit but was generally under control." *Id.* at ¶ 25.

## II. SUMMARY JUDGMENT

### A. Standard of Review

Pursuant to FED. R. CIV. P. 56(a), summary judgment is appropriate only where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party bears the burden to demonstrate through "pleadings, depositions, answers to interrogatories, and admissions on file, together with [ ] affidavits, if any," that there is no genuine issue of material fact. *F.D.I.C. v. Giammettei*, 34 F.3d 51, 54 (2d Cir. 1994) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). "When a party has moved for summary judgment on the basis of asserted facts supported as required by [Federal Rule of Civil Procedure 56(e)] and has, in accordance with local court rules, served a concise statement of the material facts as to which it contends there exist no genuine issues to be tried, those facts will be deemed admitted unless properly controverted by the nonmoving party." *Glazer v. Formica Corp.*, 964 F.2d 149, 154 (2d Cir. 1992).

To defeat a motion for summary judgment, the non-movant must set out specific facts showing that there is a genuine issue for trial, and cannot rest merely on allegations or denials of the

---

[3] By "dropping a red phone" an SCTA or other staff member can alert other CNYPC staff that an impending emergency is occurring in the vicinity of the dropped phone.

facts submitted by the movant. FED. R. CIV. P. 56(c); *see also Scott v. Coughlin*, 344 F.3d 282, 287 (2d Cir. 2003) ("Conclusory allegations or denials are ordinarily not sufficient to defeat a motion for summary judgment when the moving party has set out a documentary case."); *Rexnord Holdings, Inc. v. Bidermann*, 21 F.3d 522, 525-26 (2d Cir. 1994). To that end, sworn statements are "more than mere conclusory allegations subject to disregard . . . they are specific and detailed allegations of fact, made under penalty of perjury, and should be treated as evidence in deciding a summary judgment motion" and the credibility of such statements is better left to a trier of fact. *Scott v. Coughlin*, 344 F.3d at 289 (citing *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983) and *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995)).

When considering a motion for summary judgment, the court must resolve all ambiguities and draw all reasonable inferences in favor of the non-movant. *Nora Beverages, Inc. v. Perrier Group of Am., Inc.*, 164 F.3d 736, 742 (2d Cir. 1998). "[T]he trial court's task at the summary judgment motion stage of the litigation is carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution." *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1224 (2d Cir. 1994). Furthermore, where a party is proceeding *pro se*, the court must "read [his or her] supporting papers liberally, and . . . interpret them to raise the strongest arguments that they suggest." *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994), *accord*, *Soto v. Walker*, 44 F.3d 169, 173 (2d Cir. 1995). Nonetheless, mere conclusory allegations, unsupported by the record, are insufficient to defeat a motion for summary judgment. *See Carey v. Crescenzi*, 923 F.2d 18, 21 (2d Cir. 1991).

## B. Defendant Davis's Motion for Summary Judgment

Plaintiff's sole claim against Defendant Davis is that he used excessive force during the physical altercation that occurred on August 8, 2011. *See* Dkt. No. 7, Am. Mem. Decision & Order, dated Mar. 2, 2012; *see also* Compl. at p. VIII. Defendant Davis argues that findings of fact made by the Marcy Town Court in Plaintiff's criminal harassment trial and/or those of the arbitrator in Defendant's employment arbitration proceeding are entitled to preclusive effect in the instant action and obviate any genuine issue of material fact with respect to Plaintiff's excessive force claim. In the alternative, Davis argues that the force he used against Plaintiff was not excessive, and that he is entitled to qualified immunity. *See generally* Dkt. No. 52-8, Davis Mem. of Law. For the reasons that follow, we find that neither the factual findings of the arbitrator nor those of the criminal court are entitled to preclusive effect in the instant litigation, Plaintiff has established the existence of a genuine issue of material fact with regard to his excessive force claim, and Defendant Davis is not entitled to qualified immunity.

### 1. Collateral Estoppel

It is "clear that issues actually litigated in a state-court proceeding are entitled to the same preclusive effect in a subsequent federal § 1983 suit as they enjoy in the courts of the State where the judgment was rendered." *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 83 (1984). Federal courts look to the law of the state in which the underlying decision was issued to determine "what preclusive effect the prior judgment" might have upon the current case. *Giakoumelos v. Coughlin*, 88 F.3d 56, 59 (2d Cir. 1996). Here, the prior judgments[4] were rendered in New York,

---

[4] As explained below, it is unclear whether Defendant Davis's employment arbitration decision and award is a "judgment" for purposes of collateral estoppel. *See infra* Part II.B.1.a.

and, "[u]nder New York law, the doctrine of collateral estoppel precludes a party from relitigating in a subsequent action or proceeding an issue clearly raised in a prior action or proceeding and decided against that party or those in privity, whether or not the tribunals or causes of action are the same." *Burgos v. Hopkins*, 14 F.3d 787, 792 (2d Cir. 1994) (quoting *Ryan v. New York Tel. Co.,* 62 N.Y.2d 494, 478 (1984) (internal quotations omitted)).

For a previously litigated issue to have a preclusive effect in future litigation it must meet two requirements: "(1) [t]here must be an identity of issue which has necessarily been decided in the prior action and is decisive of the present action, and (2) there must have been a full and fair opportunity to contest the decision now said to be controlling." *Id.* (citing *Schwartz v. Public Adm'r of Bronx*, 24 N.Y.2d 65, 71 (1969) (internal quotations omitted)). Initially, the burden falls on the moving party to establish the "identity of the issues," then the burden shifts to the challenging party to establish that "he or she did not have a full and fair opportunity to adjudicate the claims involving those issues." *Khandhar v. Elfenbein*, 943 F.2d 244, 247-48 (2d Cir. 1991) (citing *Kaufman v. Eli Lilly and Co.*, 65 N.Y.2d 449, 456 (1985)).

### a. Arbitration Opinion & Award

Defendant Davis argues that pursuant to *University of Tennessee v. Elliot*, 478 U.S. 788 (1986), and *Burkybile v. Bd. of Educ. of the Hastings-on-Hudson Union Free Sch. Dist.*, 411 F.3d 306 (2d. Cir. 2005), an employer disciplinary arbitration is a "quasi-judicial administrative action" and, that therefore, the arbitrator's opinion and award is entitled to preclusive effect. *See* Dkt. No. 52-8, Davis Mem. of L. at pp. 2–7. However, we need not, and do not, determine whether such is the case. Indeed, even if the arbitration opinion and award is the equivalent of a state court judgment for purposes of collateral estoppel/issue preclusion, it would still not be entitled to preclusive effect

in the instant case.

While Plaintiff may have testified at the hearing, *see* Davis Mot., Ex. 3, Arbitration Op. & Award at p. 5, he was neither represented by counsel nor a party to the arbitration. Therefore, Plaintiff did not have a "full and fair opportunity" to litigate the issues Defendant now urges this Court to preclude in the instant action. *Burgos v. Hopkins*, 14 F.3d at 792; *see also Burkybile v. Bd. of Educ. of Hastings-On-Hudson Union Free Sch. Dist.*, 411 F.3d at 312 (finding that even where a quasi-judicial school district's employee disciplinary arbitration award was being considered for purposes of collateral estoppel/issue preclusion, the party being precluded must have had an adequate opportunity to litigate the issue(s)).

Accordingly, we recommend that Defendant Davis's Motion be **DENIED** in this regard.

### b. Criminal Trial

As a result of the physical altercation which occurred between Plaintiff and Defendants Davis and Sill on August 8, 2011, Plaintiff was convicted of harassment in the second degree. Sill & Nicolette Mot., Ex. A., Cert. of Conviction; Groves Dep. at pp. 26–28.

The Second Circuit has held that "[A] claim of excessive force would not be precluded by the plaintiff's prior convictions for resisting arrest and harassment unless facts actually determined in his criminal conviction that were necessary to the judgment of conviction are incompatible with the claim of excessive force being raised in the subsequent civil suit." *Sullivan v. Gagnier*, 225 F.3d 161, 166 (2d Cir. 2000) (*per curiam*). However, in the instant case, Defendant Davis has utterly failed to meet his burden of establishing the similarity of the issues. *Id.* at 166 ("The burden of proof with respect to whether an issue is identical to one that was raised and necessarily decided in the prior action rests squarely on the party moving for preclusion.") (citation omitted).

Indeed, other than a passing reference to the criminal trial in his Memorandum of Law, he provided only a copy of the certificate of conviction in his papers.  *See generally* Davis Mem. of Law, & Davis Mot., Ex. 4, Cert. of Conviction, dated Aug. 19, 2013.  Although it is undisputed that Plaintiff was convicted of second degree harassment, Davis Mot., Ex. 4, Cert. of Conviction; Groves Dep. at pp. 26–27, it is also possible that Plaintiff's conviction was based on the trial court's conclusion that Plaintiff merely threatened or attempted to make physical contact with Defendant Davis,[5] *see* N. Y. PENAL L. § 246.26(1) ( a person is guilty of second degree harassment if "with intent to harass, annoy or alarm another person . . . [h]e or she strikes, shoves, kicks or otherwise subjects such other person to physical contact, *or attempts or threatens to do the same.*") (emphasis added).

It is impossible to tell from the certificate of conviction alone what findings of fact were made by the trial court, and more importantly, how such findings would affect the instant litigation. *See Sullivan v. Gagnier*, 225 F.3d at 166 (faced with a similarly sparse record of the underlying criminal proceedings,[6] the *Sullivan* Court stated that "[t]he doctrine of collateral estoppel requires a detailed examination of the record in the prior state criminal case, including the pleadings, the

---

[5] Moreover, even a finding that Plaintiff actually struck Davis during the August 8 incident would not preclude Plaintiff from arguing, in the instant case, that the force Defendant Davis employed in response was constitutionally excessive.  *See Sullivan v. Gagnier*, 225 F.3d at 165 (reaching the same conclusion).

[6] In *Sullivan*, the Court added that
none of the records from the prior criminal proceeding in the Town of DeWitt Justice Court were before the district court. Thus, despite the existence of a stipulation attesting to Sullivan's convictions for harassment in the second degree and resisting arrest, it is unclear which of Sullivan's acts formed the basis for his convictions. Indeed, lacking any transcript of the state court proceedings, it is difficult to perceive how such an inquiry could take place in this case. The record placed before us does not clarify what facts were necessarily determined in the proceeding that resulted in Sullivan's conviction, or why those facts are incompatible with his claim that Gagnier responded with unreasonably excessive force.
*Sullivan v. Gagnier*, 225 F.3d at 166.

evidence submitted and the jury instructions, in order to determine what issues were actually litigated and necessary to support a final judgment on the merits").

Accordingly, we recommend that Defendant Davis's Motion be **DENIED** in this regard.

### 2. Excessive Force

Claims of excessive force brought by civilly committed persons are adjudged under the Due Process Clause of the Fourteenth Amendment rather than the Eighth Amendment's prohibition against cruel and unusual punishment; nonetheless, the same standard is used to evaluate both types of claims. *See Youngburg v. Romeo,* 457 U.S. 307 (1982); *see also Johnson v. City of New York*, 2011 WL 1044852, at *3 (S.D.N.Y. Mar. 18, 2011) (citing cases for the proposition that excessive force claims under the Fourteenth Amendment are evaluated under the same standard as those brought under the Eighth Amendment).

The Eighth Amendment prohibits the infliction of cruel and unusual punishment and is applicable to the states through the Due Process Clause of the Fourteenth Amendment. *Robinson v. California*, 370 U.S. 660, 666-67 (cited in *Tramell v. Keane*, 338 F.3d 155, 161 (2d Cir. 2003)). In *Hudson v. McMillian*, 503 U.S. 1 (1992), the Supreme Court clarified the standards for determining whether an Eighth Amendment violation occurred in the context of excessive force. Specifically, the Court stated that, "whenever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry is that set out in *Whitley* [*v. Albers*, 475 U.S. 312 (1986)]: whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." 503 U.S. at 6-7 (quoted in *Davidson v. Flynn*, 32 F.3d 27, 29 (2d Cir. 1994)). To validly assert a violation of the Eighth Amendment through the use of excessive force, an inmate must prove two components:

(1) objectively, that the defendant's actions violated "contemporary standards of decency," and (2) subjectively, that the defendant acted wantonly and in bad faith. *Blyden v. Mancusi*, 186 F.3d 252, 262-63 (2d Cir. 1999) (internal quotation marks and citations omitted).

Regarding the objective element, we note initially that "a *de minimis* use of force will rarely suffice to state a constitutional claim[.]" *Romano v. Howarth*, 998 F.2d 101, 105 (2d Cir. 1993). In that respect, "[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights." *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir. 1973) (quoted in *Hudson v. McMillian*, 503 U.S. at 10). However, the malicious use of force to cause harm constitutes an Eighth Amendment violation *per se* because in such instances "contemporary standards of decency always are violated." *Blyden v. Mancusi*, 186 F.3d at 263 (citing *Hudson v. McMillian*, 503 U.S. at 9). For example, "when a prison guard applies force against a prisoner that poses no reasonable threat simply because the guard loses his or her temper and wishes to wantonly inflict pain on the prisoner, a per se violation of the Eighth Amendment occurs." *Beckford v. Portuondo*, 151 F. Supp. 2d 204, 216 (N.D.N.Y. 2001) (citation omitted).

In assessing the objective component, the court should consider the seriousness of the injury, however, "the use of excessive physical force against a prisoner may constitute cruel and unusual punishment [even] when the inmate does not suffer serious injury;" thus, "the seriousness of the injury is relevant to the Eight Amendment inquiry, but does not end it." *Davidson v. Flynn*, 32 F.3d 27, 29-30 n.1 (2d Cir. 1994) (alterations in original) (quoting *Hudson v. McMillian*, 503 U.S. at 4).

With regard to the subjective component, a court should consider whether the defendant had a wanton state of mind when engaging in the alleged misconduct. To determine whether a defendant acted wantonly or maliciously, several factors should be examined, including

*-14-*

the extent of the injury and the mental state of the defendant, as well as the need for the application of force; the correlation between that need and the amount of force used; the threat reasonably perceived by the defendants; and any efforts made by defendants to temper the severity of a forceful response.

*Scott v. Coughlin*, 344 F.3d 282, 291 (2d Cir. 2003) (internal quotation marks and citations omitted); *see also Hudson v. McMillian*, 503 U.S. at 7).

In the instant case, Plaintiff suffered significant bruising to the left side of his face. Compl., Exs. 1 & 2, Pictures. In addition, Plaintiff suffered a "subconjunctival hemorrhage [] a bright red patch on the white of the eye. . . . [caused by] [b]lood leaking from a broken blood vessel in the eye . . . [the] injury is not serious and usually disappears without treatment within 2 to 3 weeks without treatment." Dkt. No. 60-1, Pl.'s Exs. at p. 44,[7] Discharge Instructions, dated Oct. 1, 2011. Within the Second Circuit, such injuries are typically considered *de minimus* for purposes of the Eighth Amendment. *See Tafari v. McCarthy*, 714 F. Supp. 2d 317, 352 (N.D.N.Y. 2010) (surveying cases). However, this is only one factor to be considered; even if Plaintiff's injuries are merely *de minimus* it is still possible that the force used by Defendant Davis was excessive.

Plaintiff alleges that he was seated in his chair when Defendant Davis came flying into his room and punched him in the face, knocking him out of his chair, and that he continued pummeling him as they fell to the floor. Groves Dep. at pp. 63–64. If true, such an unnecessary and unprovoked use of force would be *per se* excessive, because such malicious and sadistic behavior "always violates contemporary standards of decency." *See Blyden v. Mancusi*, 186 F.3d at 262-63. Contrariwise, it is also possible that a reasonable juror accepting Defendant Davis's construction of the facts – that Plaintiff started the incident by grabbing his shirt and pulling him into his room requiring Defendant Davis to take Plaintiff down to the ground – could conclude that Davis's actions

---

[7] Plaintiff's Exhibits are unlabeled, therefore, we refer to the page number automatically assigned to Docket Number 60-1 by the Court's Case Management Electronic Case Filing system.

were nothing more than a good faith effort to maintain order which resulted in mere *de minimus* injuries. However, decisions as to whether Defendant Davis's account is more credible than that of the Plaintiff require the type of credibility assessment which can only be made by a jury or other finder of fact. *See Nora Beverages, Inc. v. Perrier Group of Am., Inc.*, 164 F.3d 736, 742 (2d Cir. 1998); *see also Scott v. Coughlin*, 344 F.3d at 289.

Accordingly, because there is a genuine issue of material fact with regard to Plaintiff's excessive force claim against Defendant Davis, we recommend that the Defendant Davis's Motion for Summary Judgment be **DENIED**.

### 3. Qualified Immunity

Qualified immunity is an affirmative defense that must be raised and proven by those seeking it's protection. *Vincent v. Yelich*, 718 F.3d 157, 166 (2d Cir. 2013) (citing Gomez v. Toledo, 446 U.S. 635, 640 (1980), *Harlow v. Fitzgerald,* 457 U.S. 800, 815 (1982), & *Sudler City of New York,* 689 F.3d 159, 174 (2d Cir. 2012)). Qualified immunity shields public officials from being sued for conduct undertaken in the course of their duties so long as that conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. at 818; *Eng v. Coughlin*, 858 F.2d 889, 895 (2d Cir. 1988). The doctrine "provides ample protection to all but the plainly incompetent or those who knowingly violate the law[.]" *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

In assessing qualified immunity, courts conduct "a two-part inquiry, exercising flexibility in deciding which question to address first. We ask whether the plaintiff has adduced facts sufficient to make out a violation of a constitutional right and whether the right at issue was clearly established at the time of defendant's alleged misconduct." *See Vasquez v. Klie*, 513 F. App'x 85, 86 (2d Cir.

2013) (internal citations and quotation marks omitted).   To be clearly established "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right."   *Anderson v. Creighton*, 483 U.S. 635, 640 (1987).   In determining whether an officials actions were reasonable in light of existing law, we do not consider "how courts or lawyers might have understood the state of the law at the time," but rather whether it would have been clear to a reasonable official that his conduct was unlawful under the circumstances.   *Id.* (citing *Saucier v. Katz*, 533 U.S 194, 202 (2001)).

It is clear that civilly committed persons have a constitutionally protected right to be free from the use of excessive force.   *See Youngburg v. Romeo,* 457 U.S. at 315–16.   In the instant case it is unclear whether the force used by Defendant Davis was justified or necessary under the circumstances or merely a malicious and sadistic application of force intended solely for the purpose of harming Plaintiff.   *See supra* Part II.B.2.   Thus, it would be patently premature for this Court to conclude that, "no reasonable jury . . . could conclude that it was objectively unreasonable for [Defendant Davis] to believe that he was acting in a fashion that did not clearly violate an established federally protected right."   *See Lee v. Sandberg*, 136 F.3d at 102; *see also Tafari v. McCarthy*, 714 F. Supp. 2d at 353-54 (denying summary judgment on qualified immunity grounds where there was an outstanding question of material fact regarding the malicious intent of the defendant).   Therefore, we recommend that Defendant Davis's Motion for Summary Judgment be **DENIED** as to qualified immunity**.**

### C.   Defendants Sill's and Nicolette's Motion for Summary Judgment

Plaintiff claims that Defendant Sill used excessive force against him on August 8, 2011, and that both Defendant Sill and Defendant Nicolette were aware of Defendant Davis's plan to attack

Plaintiff, but were deliberately indifferent by failing to take any steps to prevent it from occurring. *See generally* Compl.; *see also* Dkt. No. 7, Am. Mem. Decision & Order, at pp. 8–9. Defendants Sill and Nicolette argue that the basis for Plaintiff's allegations – the notion that Defendant Sill and Nicolette had prior knowledge the attack would occur – lacks any factual support, that the amount of force used by Defendant Sill was not excessive, and that both Defendants are entitled to qualified immunity. *See generally* Dkt. No. 59-6, Defs.' Mem. of Law (hereinafter "Sill & Nicolette Mem. of Law"). As explained below, genuine issues of fact remain with regard to Plaintiff's claims against Defendants Sill and Nicolette, and therefore, we recommend that their Motion for Summary Judgment be **DENIED.**

### 1. *Prior Knowledge of the Attack*

Plaintiff claims that while standing together in the recreation yard prior to evening medication distribution, Defendants Sill, Nicolette, and Davis discussed Davis's alleged plan to attack him. Groves Dep. at pp. 69–73. However, Plaintiff also freely acknowledges that he could not hear the substance of that conversation; but he claims that because they were looking at him and laughing, he "believed" that they were planning the attack at that time. *Id.* Defendants Sill and Nicolette adopt Plaintiff's claims that they congregated in the recreation yard with Defendant Davis on August 8. *See* Sill & Nicolette 7.1 Statement at ¶¶ 8–9 (adopting by reference Plaintiff's Deposition testimony). However, they argue that Plaintiff's self confessed ignorance as to the substance of their conversation establishes that Plaintiff cannot plausibly allege a cause of action for excessive force or failure to protect against either Defendant. Sill & Nicolette Mem. of Law at pp. 2–3. Yet, as demonstrated below, the sworn Affidavit of Floyd Yelle, a fellow resident at CNYPC, corroborates Plaintiff's suspicions and is sufficient, at this stage, to raise a genuine issues of material

fact as to whether they were aware of Davis's alleged plan prior to the physical altercation.[8]  *See Scott v. Coughlin*, 344 F.3d at 289.

In his Affidavit, Yelle avers that he was present in the yard with Plaintiff on August 8, that he was walking laps around the yard, and that as he did so he passed by Defendants Davis, Sill, Nicolette, and SCTA Kenneth Williams[9] who were talking with one another.  Dkt. No. 59-3, Floyd Yelle Aff., dated Nov. 20, 2013, at pp. II–III.  Yelle claims that he overheard bits and pieces of the group's conversation.  *Id.* at p. III.  Specifically, Yelle claims that he heard the group mention Plaintiff's name several times, SCTA Kenneth Williams say "[t]hat's what we'll do Brett[,]" and Defendant Davis respond "[y]ah, he'll get his!"  *Id.*  Additionally, Yelle corroborated Plaintiff's account of the other interactions between Plaintiff and Defendant Davis which occurred on August 8, 2011.

According to Yelle, at about 5:25 p.m., he and Plaintiff were returning to their rooms from their evening meal, when Plaintiff made the comment that "[Defendant Davis] always struts around here with his chest puffed out attempting to intimidate and frighten the residents, but he ain't [sic] nothing."  *Id.* at p. I.  Yelle claims that Defendant Davis overheard the conversation and "came rushing over to where we were. . . stood in [Plaintiff's] face and began yelling, 'Groves, . . . shut the fuck up or I['ll] beat the shit out of you."  *Id.* at p. II.  Yelle further contends that Defendant Nicolette witnessed this interaction.  *Id.*

Yelle also stated that around 7:45 p.m., he observed a second incident between Plaintiff and Defendants Davis and Nicollete.  According to Yelle, Defendant Nicolette was distributing

---

[8] Yelle's Affidavit was submitted with Plaintiff's Opposition to Defendants Sill's and Nicolette's Motion.  Dkt. No. 59-3, Floyd Yelle Aff., dated Nov. 20, 2013.

[9] Kenneth Williams is not a named Defendant in this action.

medication, and Defendant Davis was pouring cups of water for the residents. Although he took his medication, Plaintiff did not take a cup of water from Defendant Davis. As Plaintiff walked away from the medication cart, Defendant Davis shouted "[y]ou'll get yours soon rape-o! You'll get yours." *Id.* at pp. III-IV.

Finally, Yelle claims that, at approximately 9:30 p.m., he witnessed Defendant Davis "quickly and quietly pass [his] room . . . [and saw Defendant Davis] fling open [Plaintiff's] room and rush inside yelling '[g]ot your ass now!' then heard what sounded like a hand or fist hitting bare skin, then what sounded like a struggle and what sounded like furniture slamming on the floor.'" *Id.* at p. IV. Next, Yelle claims he witnessed an unidentified SCTA come down the hall, drop a red phone, and proceed into Plaintiff's room where Defendant Davis was yelling "'[g]et the bed! Help! [H]elp! Get the Bed' over and over." *Id.* Yelle then saw several other unidentified SCTA's go to Plainitff's room, followed by Defendant Nicolette. *Id.* at p. V.

In short, Yelle's Affidavit provides admissible evidence in support of Plaintiff's account of the events of August 8, 2011. Given Yelle's averments, it would not be unreasonable for a juror crediting the accounts of Plaintiff and Yelle, to conclude that Defendant Nicolette witnessed Defendant Davis threaten Plaintiff on at least two occasions prior to the physical altercation at 9:30, and that while in the yard Defendants Sill and Nicolette were privy to a conversation in which Defendant Davis discussed his alleged plan to assault Plaintiff. In other words, Plaintiff has established the existence of a genuine issue of fact as to whether Defendants Sill and Nicolette knew of Davis's intent to assault Plaintiff. Moreover, as explained below, this issue is material to Plaintiff's claims against Defendants Sill and Nicolette.

## 2. *Defendant Nicolette*

Plaintiff alleges that Defendant Nicolette was personally involved in the actions of Defendant Davis by virtue of his supervisory position, and/or that he was aware Davis would attack Plaintiff and failed to protect him. Compl. at p. VIII; Dkt. No. 7, Am. Mem. Decicion & Order at pp. 8–9.

Plaintiff alleges that Defendant Nicolette was "a Registered Nurse and Ward Supervisor on [his] Ward." Compl. at pp. I–II. Defendants Sill and Nicolette do not contest Plaintiff's allegations that Defendant Nicolette was a ward supervisor. Furthermore, Plaintiff alleges that Defendant Nicolette remained in the nurses' office during the 9:30 p.m. attack despite the fact that he knew the attack would occur. *Id.* at pp. IV–V. Defendants Sill and Nicolette contend that Defendant Nicolette had no prior knowledge of the attack, and therefore, had no ability or duty to intervene. Sill & Nicolette Mem. of Law at pp. 5–6.

A prison inmate has a constitutional right under the Eighth and Fourteenth Amendments to be free from the "unnecessary and wanton infliction of pain." *Hendricks v. Coughlin*, 942 F.2d 109, 112 (2d Cir.1991) (citation omitted). "The Eighth Amendment requires prison officials to take reasonable measures to guarantee the safety of inmates in their custody." *Hayes v. New York City Dep't of Corr.*, 84 F.3d 614, 620 (2d Cir. 1996) (citing *Farmer v. Brennan*, 511 U.S. 825, 832-33 (1994)); *Heisler v. Kralik*, 981 F. Supp. 830, 837 (S.D.N.Y. 1997) ("Prison officials have a constitutional duty to act reasonably to ensure a safe environment for a prisoner when they are aware that there is a significant risk of serious injury to that prisoner."); *see also Avincola v. New York State Dep't of Corr. Servs.*, 1998 WL 146280, at *3 (N.D.N.Y. Mar. 27, 1998).

In order to state such a claim, the prisoner must demonstrate that the prison officials "acted with deliberate indifference with respect to his safety or with an intent to cause harm to him."

*Hendricks v. Coughlin*, 942 F.2d at 113. A showing of mere negligence on behalf of the defendants is not enough to state a constitutional claim. *Whitley v. Albers*, 475 U.S. 312, 319 (1986) (cited in *Hendricks v. Coughlin*, 942 F.2d at 113). The key element of a failure to protect claim is the existence or potential existence of a substantial risk of serious harm and not the actual harm which may or may not ensue. *Farmer v. Brennan*, 511 U.S. at 836. To prove deliberate indifference, the plaintiff must show that the "official [knew] of and disregard[ed] an excessive risk to inmate health or safety." *Id*. at 837 (cited in *Ramirez v. Mantello*, 1998 WL 146246, at *2 (N.D.N.Y. Mar. 24, 1998)). "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, *and* he must also draw the inference." *Id.* (emphasis added).

Further, a supervisor can be held liable when he or she has actual or constructive notice of unconstitutional practices, but similarly acted with gross negligence or deliberate indifference in failing to act. *See Meriwether v. Coughlin*, 879 F.2d 1037, 1048 (2d Cir. 1989). "Such a supervisor may not escape the consequences of his or her failure to act by pleading the doctrine of qualified immunity." *Fossett v. Morris*, 1991 WL 67093, at *3 (S.D.N.Y. Apr. 22, 1991).

As noted above, whether Defendant Nicolette was aware of Defendant Davis's alleged plan to assault Plaintiff remains a genuine issue of material fact. *Supra* Part II.C.1. Furthermore, Defendants Sill and Nicolette have not challenged Plaintiff's claim that Defendant Nicolette was a ward supervisor. Accordingly, we cannot conclude that it would be unreasonable for a juror, crediting Plaintiff's version of events, to find that Defendant Nicolette knew of an impending risk to the health and safety of Plaintiff, was deliberately indifferent to that risk by not reporting Defendant Davis, and/or was personally involved in the incident by virtue of his knowledge that the attack would occur and his failure to intervene. *See Bhuiyan v. Wright*, 2009 WL 3123484, at *7

(N.D.N.Y. Sept. 29, 2009) ("An officer's failure to intervene during another officer's use of excessive force can itself constitute an Eighth Amendment violation unless the assault is "sudden and brief," and the defendant had no real opportunity to prevent it."); *Jeffreys v. Rossi*, 275 F. Supp. 2d 463, 474 (S.D.N.Y. 2003) (holding that an officer may be personally involved in the use of excessive force if he either directly participates in the assault or if he was present during the assault, yet failed to intervene on behalf of the victim, even though the officer had a reasonable opportunity to do so).

Accordingly, we recommend that Defendants Sill's and Nicolette's Motion for Summary Judgment be **DENIED** as to Plaintiff's supervisory liability/failure to protect claims against Defendant Nicolette.

### 3. Defendant Sill

Plaintiff claims that Defendant Sill acted with excessive force when he knowingly helped Defendant Davis carry out his plan to assault Plaintiff by diving on Plaintiff's legs while Defendant Davis continued to punch Plaintiff in the face. Compl. at p. VIII; Pl.'s Opp'n at p. I.

It is difficult to imagine how Sill's act of merely holding the Plaintiff's legs could amount to an excessive use of force, particularly in light of the fact that Plaintiff does not allege that he was injured in anyway by Defendant Sill. However, as noted above, a genuine issue of material fact exists with regard to whether Defendant Sill knew about the alleged attack before it occurred. *See supra* Part II.C.1. Accepting this allegation as true, as well as Plaintiff's further allegations that Defendant Davis was still punching Plaintiff in the head when Defendant Sill dove on his legs, it is possible that a reasonable juror could conclude that Defendant Sill was personally involved in a malicious and sadistic attack on Plaintiff for the very purpose of inflicting harm; a *per se* violation

of the Eighth and Fourteenth Amendments. *See supra* Part II.B.2. And, while Defendant Sill's account – that he new nothing of the attack in advance, that he witnessed Plaintiff poking Defendant Davis and pulling him by his shirt into Plaintiff's room, that Defendant Davis had Plaintiff in a wrap when he arrived at Plaintiff's room (but was not punching Plaintiff), and that he responded only with the minimum amount of force necessary – if credited by a jury, might well absolve him of any culpability, the decision as to which competing version of events is more credible remains a task that can only be completed by a jury or other finder of fact.

Accordingly, we recommend that Defendants Sill's and Nicolette's Motion for Summary Judgment be **DENIED** as to Plaintiff's excessive force claim against Defendant Sill.

### 4. Qualified Immunity

Defendants Sill and Nicolette argue that they are entitled to qualified immunity. However, as a supervisor, Defendant Nicolette "may not escape the consequences of his . . . failure to act by pleading the doctrine of qualified immunity." *Fossett v. Morris*, 1991 WL 67093, at *3. Consequently, given that it remains a genuine issue of fact as to whether Defendant Nicolette knew of the impending attack, *see supra* Part II.C.2, to excuse Defendant Nicolette at this stage would be premature.

Similarly, given the existence of outstanding issues of material fact regarding whether Defendant Sill merely reacted to a cry for help by Defendant Davis, or knowingly participated in a *per se* violation of Plaintiff's constitutional right to be free from excessive force when he held down Plaintiff's legs, a finding that he is entitled to qualified immunity would likewise also be premature at this stage. *See supra* Part II.B.3; *see also Tafari v. McCarthy*, 714 F. Supp. 2d at 353-54. Accordingly, we recommend that Defendants Sill's and Nicolette's Motion for Summary Judgment

be **DENIED**.

### III.  MOTION TO AMEND

### A.  Standard of Review

While some of the claims Plaintiff seeks to add arise out of the same facts and events as the claims in his initial Complaint and are therefore governed by FED. R. CIV. P. 15(a), the vast majority of the claims and allegations in Plaintiff's Proposed Amended/Supplemental Complaint arise out of events which Plaintiff claims transpired after the filing of his initial Complaint, and are therefore, more appropriately categorized as supplemental claims under FED. R. CIV. P. 15(d).

 FED. R. CIV. P. 15(a) provides that "[a] party may amend the party's pleading once as a matter of course at any time before a responsive pleading is served . . . Otherwise a party may amend the party's pleading by leave of the court . . . and leave shall be freely given when justice so requires."  Whereas, FED. R. CIV. P.15(d) states:

> On motion and reasonable notice, the court may, on just terms, permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented.  The court may permit supplementation even though the original pleading is defective in stating a claim or defense.  The court may order that the opposing party plead to the supplemental pleading within a specified time.

Although the two statutory provisions are similar, "[t]he function of FED.R.CIV.P. 15(a) is to permit a party to assert matters that were either overlooked or unknown at the time when the party's original complaint was prepared[] [whereas] [t]he function of FED.R.CIV.P. 15(d) is to enable the party to set forth in supplemental pleadings transactions or occurrences or events which have happened since the date of the original pleadings."  *Carter v. Artuz*, 1998 WL 782022, at *2 (S.D.N.Y. Nov. 6, 1998) (citations omitted); *Albrecht v. Long Island Rail Road*, 134 F.R.D. 40, 41 (E.D.N.Y. 1991); *see also McLean v. Scully*, 1991 WL 274327, at *1 (S.D.N.Y. Dec. 9, 1991) (the supplemental pleading

should be "adequately related to the originally stated claims"). The standard for a motion to supplement is the same as for a motion to amend the pleadings under Rule 15(a). *Klos v. Haskell*, 835 F. Supp. 710, 715 (W.D.N.Y. 1993).

Generally, the court has discretion over whether or not to grant leave to amend a pleading. *Foman v. Davis*, 371 U.S. at 182; *Quentin Group LLC. v. Interlink Prod. Int'l, Inc.*, 1997 WL 313156, at *2 (S.D.N.Y. June 9, 1997) (citing *Quarantino v. Tiffany & Co.*, 71 F.3d 58, 66 (2d Cir.1995)). In deciding whether to exercise its discretion, the court must examine whether there has been undue delay, bad faith, or dilatory motive on the part of the moving party. *Evans v. Syracuse City Sch. Dist.*, 704 F.2d 44, 46 (2d Cir. 1983) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)). The court must also examine whether there will be prejudice to the opposing party. *Kovian v. Fulton Cnty. Nat'l Bank*, 1992 WL 106814 (N.D.N.Y. May 13, 1992). As noted by the Supreme Court:

> In the absence of any apparent or declared reason – such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc. – the leave sought should . . . be "freely given."

*Foman v. Davis*, 371 U.S. at 182.

Where futility is the basis in opposing a motion to amend, the appropriate review standard is a motion to dismiss pursuant to Rule 12(b)(6). On a motion to dismiss, the allegations of the complaint must be accepted as true. *See Cruz v. Beto*, 405 U.S. 319, 322 (1972). Nevertheless, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (emphasis added). In that respect, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice." *Iqbal* at 678 (citation omitted). Thus, in spite of the deference the court is bound to give to the plaintiff's allegations, it is not proper for the court to assume that "the [plaintiff] can

prove facts [which he or she] has not alleged or that the defendants have violated the . . . laws in ways that have not been alleged." *Assoc. Gen. Contractors of California, Inc. v. California State Council of Carpenters*, 459 U.S. 519, 526 (1983).

Moreover, while Rule 15 of the Federal Rules of Civil Procedure generally governs the amendment of complaints, in the case of proposed amendments where new defendants are to be added, the Court must also look to Rules 20 and 21. *Ward v. LeClaire*, 2008 WL 182206, at *3 (N.D.N.Y. Sept. 26, 2007) (citing *United States v. Chilstead Building Co.*, No. 96-CV-0641 (N.D.N.Y. Nov. 7, 1997) (citations omitted)). Rule 21 states that a party may be added to an action "at any time [and] on just terms." Fed. R. Civ. P. 21.[10] Rule 21 is "intended to permit the bringing in of a person, who through inadvertence, mistake or for some other reason, had not been made a party and whose presence as a party is later found necessary or desirable." *Goston v. Potter*, 2010 WL 4774238, at *5 (N.D.N.Y. Sept. 21, 2010) (quoting *United States v. Commercial Bank of North America*, 31 F.R.D. 133, 135 (S.D.N.Y. 1962) (internal quotations marks omitted)). The addition of parties under Rule 21 is guided by the same liberal standard as a motion to amend under Rule 15. *See Ward v. LeClaire*, 2008 WL 182206, at *3; *Varela v. Cnty of Rensselaer*, 2012 WL 1355212, at *7 (N.D.N.Y. Apr. 18, 2012) (quoting *Fair Housing Dev. Fund Corp. v. Burke*, 55 F.R.D. 414, 419 (E.D.N.Y. 1972)).

---

[10] "Rule 21 cannot be read alone but must be read in the light of Rules 18, 19 and 20[.]" *United States v. Commercial Bank of North America*, 31 F.R.D. 133, 135 (S.D.N.Y. 1962). In this respect, the federal rules state, in part, that "[p]ersons . . . may be joined in one action as defendants if: (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action." Fed. R. Civ. P. 20(a)(2). Rule 20(a)(2) is liberally construed "so as to promote judicial economy and to allow related claims to be tried within a single proceeding." *Equal Employment Opportunity Comm'n v. Nichols Gas & Oil, Inc.*, 518 F. Supp. 2d 505, 508-09 (W.D.N.Y. 2007) (citing, *inter alia*, *Barr Rubber Prods. Co. v. Sun Rubber Co.*, 425 F.2d 1114, 1127 (2d Cir. 1970)).

## B. Discussion

By his Motion to Amend, Plaintiff seeks to supplement his Complaint by adding a swath of new claims involving a host of new defendants, based primarily on events which occurred after he filed his initial complaint – specifically, that he was the victim of a massive conspiracy to coverup the alleged August 8, 2011 assault. *See* Proposed Am. Compl. at ¶¶ 119 & 123. In addition Plaintiff attempts to resurrect claims which were already determined by this Court to be untimely and futile when he first attempted to amend his Complaint on June 11, 2013 – namely, that SCTA Kenneth Williams knew of Davis's alleged plan to assault Plaintiff and failed to protect him. Dkt. No. 47, Decision and Order, dated July 23, 2013. Defendants argue, in separate Memorandums of Law, that Plaintiff's proposed amendments are untimely, prejudicial, and futile. *See generally* Dkt. Nos. 65 & 66. As explained below, the proposed amendments are untimely, and therefore, Plaintiff's Motion to Amend is **DENIED.**

With regard to Plaintiff's attempt to resubmitt his claim against Kenneth Williams, the Court notes that Plaintiff already proposed a nearly identical request to add Williams as a defendant On June 11, 2013. Dkt. No. 43, Pl.'s Mot. to Amend. This Court denied that request on July 23, 2013. In our Decision and Order, we noted, *inter alia*, that allowing Plaintiff to add another claim and defendant would have been unjustifiably prejudicial to the Defendants given the Court's refusal to extend or re-open, what was at that time, the rapidly impending discovery deadline of August 19, 2013, and/or the dispositive motion deadline of September 19, 2013. Dkt. No. 47, Dec. & Ord., dated July 23, 2013, at pp. 6–7. Plaintiff's present attempt to resurrect his claims against Kenneth Williams is only all the more untimely and potentially prejudicial to Defendants in light of the fact that both deadlines have now long since expired. Therefore, Plaintiff's Motion is **DENIED** with

regard to his claims against Defendant Williams.[11]

In addition to his claims against Kenneth Williams, Plaintiff's Proposed Amended Pleading also alleges that:

> the defendants Moreen Bosco, Jeff Nicolett, Charmaine Bill, Robert Bauer, Doreen St. Thomas, David W. Kozyra, Gerald DeRuby, David A. Ball and Frank J. Nebush Jr. did in fact conspire and act together to cover-up the attacks on the plaintiff and numerous other residents of the Sex Offender Treatment Program at Central New York Psychiatric Center by going so far as the filing of false and fabricated reports, statements with incomplete and inadequate investigations reports then the filing of false and fabricated criminal charges with the New York State Police, Marcy, New York substation, Oneida County District Attorney and the Town of Marcy Court, and to be unprofessionally defended by Doreen St. Thomas of the Oneida County Public defenders Office.

Proposed Am. Compl. at ¶ 123.

This request is also untimely. The sum and substance of Plaintiff's supplemental conspiracy claim arises out of events surrounding his criminal prosecution for second degree harassment. Plaintiff was charged with criminal harassment on September 21, 2011, and convicted at trial on January 24, 2012. *See* Davis Mot., Ex. 4, Cert. of Conviction. Thus, the facts relevant to his supplemental claims were well known to Plaintiff when he filed his first motion to amend on June 11, 2013.[12] Dkt. No. 43, Pl.'s Mot. to Am.

---

[11] Moreover, Plaintiff's Proposed Amended Complaint contains no new significant allegations regarding William's involvement in the alleged August 8, 2011 assault and conspiracy. *Compare* Dkt. No. 47, Dec. & Ord. at pp. 5–6, *with* Proposed Am. Compl. Indeed, Plaintiff fails to mention the facts as alleged in Floyd Yelle's Affidavit in his Proposed Amended Complaint. *See* Part II.C.1. However, even if he had, we would still find the claims untimely because Plaintiff has failed to explain why he did not include Yelle's claims in his first motion to amend his Complaint. A fact that is particularly troubling to the Court given that Plaintiff was, or should have been, aware of Yelle's contentions well over a year before Plaintiff filed his first motion to amend in June of 2013. *See* Yelle Aff. at ¶ 12 (claiming that Yelle "agreed to testify for [Plaintiff] at his Harassment Trial" which occurred in January of 2012). Likewise, Plaintiff's claim that Williams and others filed false reports about him are simply incognizable in a § 1983 action. *See, e.g.*, Proposed Am. Compl. at ¶¶ 104–106; *see also Boddie v. Schnieder*, 105 F.3d 857, 862 (2d Cir. 1997) (citing *Freeman v. Rideout*, 808 F.2d 949, 951 (2d Cir. 1986)).

[12] The latest date Plaintiff mentions as relevant to his allegations is June 21, 2013 – the day he claims to have filed a grievance with the "Fifth Judicial District" against his attorney Maureen St. Thomas, the public defender who represented him at his criminal harassment trial. Proposed Am. Compl. at ¶ 97. However, Plaintiff informs us that the basis of his grievance against Mrs. St. Thomas stems from her representation of Plaintiff during his criminal harassment trial, which ended on January 24, 2012. *Id.* Thus, although Plaintiff did not file his grievance against Mrs. St. Thomas until ten days after he filed his first motion to amend on June 11, 2013, the factual basis supporting the grievance were clearly known to him prior to June 11, 2013.

Yet, Plaintiff offers no explanation for his failure to interpose these claims during his first motion to amend. Nor does Plaintiff explain why he waited an additional six months, until January 14, 2014, well after the close of discovery and the termination of the dispositive motion deadline, before attempting to do so. As we made clear in our July 23, 2013 Decision and Order, the Court does not intend to re-open discovery in this matter. Therefore, we cannot now, in fairness to Defendants, permit Plaintiff to add an additional ten defendants and multiple claims on the eve of trial. Accordingly, Plaintiff's Motion to Amend is **DENIED**.[13]

## IV. IFP MOTION

In light of the fact that Plaintiff was already granted the right to proceed IFP in this action, Dkt. No. 7, Am. Mem. Decision & Order, dated Mar. 2, 2012, at p. 3, it is **ORDERED** that Plaintiff's second Motion to proceed IFP be **DENIED** as moot.

## V. CONCLUSION

For the reasons stated herein, it is hereby

**ORDERED**, that Plaintiff's Motion to Amend (Dkt. No. 62) and Motion to proceed IFP (Dkt. No. 63) are **DENIED**; and it is further

**RECOMMENDED**, that Defendant Davis's Motion for Summary Judgment (Dkt. No. 52)

---

[13] In any event, Plaintiff's supplemental claims are also largely futile. For example, Plaintiff fails to provide a single non-conclusory factual allegation from which it could reasonably be inferred that there was a meeting of the minds between the numerous alleged players in Plaintiff's grand conspiracy – which purportedly included, among others, members of CNYPC's staff and management, officers of the New York State Police, lawyers from the Oneida County District Attorney's and Public Defender's offices, and two presiding Justices of the Marcy Town Court. *See generally* Proposed Am. Compl.; *see also Romer v. Morgenthau*, 119 F. Supp. 2d 346, 363 (S.D.N.Y. 2000) (citing cases for the proposition that "plaintiff must provide some factual basis supporting a 'meeting of the minds', such as that defendants 'entered into an agreement, express or tacit, to achieve the unlawful end'").

Additionally, many of Plaintiff's other supplemental claims would otherwise be barred. For example, Plaintiff's claims against the Marcy Town Court Judges and the Oneida County District Attorney, *see* Proposed Am. Compl. at ¶¶ 123, are likely to be barred under the doctrines of prosecutorial and judicial immunity, *see Forrester v. White*, 484 U.S. 219 (1988) and *Imbler v. Pachtman*, 424 U.S. 409 (1976). Similarly, Plaintiff's claim that he was wrongfully convicted of second degree harassment in Marcy Town Court is barred by the Supreme Court's ruling in *Heck v. Humphrey*, 512 U.S. 477 (1994), because Plaintiff has not established that his conviction has been reversed, expunged, or otherwise deemed invalid.

be **DENIED**; and it is further

 **RECOMMENDED**, that the Motion for Summary Judgment submitted by Defendants Sill and Nicolette (Dkt. No. 55) be **DENIED;** and it is further

 **RECOMMENDED**, that this case be deemed trial ready; and it is further

 **ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order upon the parties to this action.

 Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **<u>FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW.</u>** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72 & 6(a).


Date: August 11, 2014
   Albany, New York


Randolph F. Treece
U.S. Magistrate Judge